[No. C000019. Third Dist. June 12, 1987.]

In re CINDY B. et al., Minors.
SACRAMENTO COUNTY DEPARTMENT OF SOCIAL
SERVICES, Petitioner and Respondent, v.
EUGENE B., Objector and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rule 971.1 of the California Rules of Court, all portions of this opinion shall be published except part II.

772

774

COUNSEL

Dennis Michael O'Reilly, under appointment by the Court of Appeal, for Objector and Appellant.

L. B. Elam, County Counsel, and Kathleen A. O'Connor, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

SIMS, J.—In its various subdivisions, Welfare and Institutions Code section 300 sets forth descriptions of children who may be made dependent children of the court. (All further references to statutes in a 300 series are to the Welfare and Institutions Code.)[1] Once made a dependent child of the court under any subdivision of section 300, a child may be removed from the custody of his or her parents provided certain statutory criteria are satisfied. (§ 361, subds. (a), (b).)

Civil Code section 232 describes various circumstances in which parental rights may be forever terminated. (See *In re Carmaleta B.* (1978) 21 Cal.3d 482, 488-489 [146 Cal.Rptr. 623, 579 P.2d 514]; all further references to section 232 are to this statute.)

---

[1] Section 300 provides in pertinent part: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent, guardian or custodian actually exercising care or control.

"(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode, except that no person may be adjudged a dependent child solely due to the lack of an emergency shelter for the family.

"(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder, or abnormality.

"(d) Whose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of his or her parents, or of his or her guardian or other person in whose custody or care he or she is.

"(e) Who is under the age of three and whose home is an unfit place for him or her as a result of severe physical abuse of the minor by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that that person was physically abusing the minor. For the purpose of this section, 'severe physical abuse' means any of the following: any single act of abuse which causes physical trauma of sufficient severity that, if left untreated, it would cause permanent physical disfigurement, permanent physical disability, or death; any single act of sexual abuse which causes significant bleeding, deep bruising, or significant external or internal swelling; or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness.

"(f) Who has been freed for adoption from one or both parents for 12 months by either relinquishment or termination of parental rights and for whom an interlocutory decree has not been granted pursuant to Section 224n of the Civil Code or an adoption petition has not been granted."

As we shall explain more fully, before 1984, subdivision (a)(2) of section 232 provided parental rights could be terminated only if a child had been made a dependent child pursuant to subdivision (d) of section 300. In 1983, subdivision (a)(2) of section 232 was amended effective January 1, 1984, to allow termination of parental rights if, among other things, a child had been made a dependent child pursuant to *any* subdivision of section 300.

In this case, appellant Eugene B., the father of five children, appeals from a judgment entered in 1984 terminating his parental rights pursuant to section 232, subdivision (a)(2). Eugene contends the predicate section 300 proceedings are void because of procedural irregularities. In an unpublished portion of this opinion, we reject these arguments.

Eugene also contends the trial court unlawfully applied the 1984 version of subdivision (a)(2) of section 232 retroactively to terminate his parental rights, because his children had been made dependent children in 1981 pursuant to section 300, subdivision (b)—a subdivision not then constituting a ground for termination of parental rights under subdivision (a)(2) of section 232.[2]

We agree the 1984 version of subdivision (a)(2) of section 232 was applied retroactively. We conclude the Legislature did not intend that the amended statute be so applied. We therefore reverse the section 232 judgment.

### FACTS AND PROCEDURAL BACKGROUND

Before 1980, Eugene and his wife Georgia lived with the children in Chicago, Illinois. Eugene had a drinking problem and was physically abusive to Georgia and the children.

In September 1980 Georgia and the children left for Sacramento, leaving Eugene in Chicago. Eugene had no contact with the children thereafter.

On January 9, 1981, the children were made dependent children of the juvenile court pursuant to subdivision (b) of section 300, on the ground they had not been provided with a home or suitable abode.

On March 17, 1981, the children were removed from their parents' custody and ultimately placed in foster homes by the juvenile court. The children remained free of the custody and control of their parents at all times after March 1981.

---

[2] Although this contention was never tendered to the trial court, we consider it because if it is correct, the trial court had no authority to terminate Eugene's parental rights under subdivision (a)(2).

In March 1983 the county filed a petition to declare the children free from the custody and control of Georgia and Eugene under subdivisions (a)(1), (a)(2) and (a)(7) of section 232. The case was tried in February 1984. The court found in favor of Georgia and refused to terminate her parental rights. The court found in Eugene's favor on the subdivision (a)(1) and (a)(7) allegations but sustained the petition under subdivision (a)(2). The court ordered termination of Eugene's parental rights, finding that he had neglected and cruelly treated the children, that the children had been dependent children for more than one year, and that he had been deprived of custody for more than one year.

DISCUSSION

I

THE SECTION 232 PROCEEDINGS

Eugene contends the 1984 version of section 232, subdivision (a)(2) was unlawfully applied to him. For reasons that follow, we agree.

A.  *The history of subdivision (a)(2) of section 232.*

The version of subdivision (a)(2) of section 232 in effect when the children were made dependents in 1981 provided that termination of parental rights could be ordered for a child "Who has been cruelly treated or neglected by either or both of [the child's] parents, if such person has been a dependent child of the juvenile court, and such parent or parents have been deprived of [the child's] custody for the period of one year prior to the filing of a petition praying that [the child] be declared free from the custody and control of such cruel or neglectful parent or parents." (Stats. 1979, ch. 245, p. 533.)

The Legislature first added this language as a part of its 1967 amendment to section 232, subdivision (b) [now section 232, subdivision (a)(2)]. (Stats. 1967, ch. 1052, p. 2658.) Between 1967 and 1983, this language was reenacted many times without change by the Legislature. (See Stats. 1970, chs. 240, 735; Stats. 1971, chs. 438, 1210; Stats. 1972, ch. 579; Stats. 1973, ch. 686; Stats. 1976, chs. 653, 940; Stats. 1977, ch. 1252; Stats. 1978, chs. 391, 429, 1269; Stats. 1979, ch. 245; Stats. 1982, ch. 978.) During the same period of time, this language was consistently interpreted by courts to allow termination of parental rights *only* where the child had been made a dependent child and removed from parental custody on account of cruelty or neglect pursuant to section 300, *subdivision (d)* (see fn. 1, *ante*). (*In re Jack H.* (1980) 106 Cal.App.3d 257, 265-266 [165 Cal.Rptr. 646]; *In re T.M.R.*

(1974) 41 Cal.App.3d 694, 700 [116 Cal.Rptr. 292]; cf. *In re Christina P.* (1985) 175 Cal.App.3d 115, 132-133 [220 Cal.Rptr. 525].) ■ Because the Legislature reenacted the cited language without change in the wake of these judicial interpretations, the Legislature is deemed to have approved and adopted the meaning given the statute by the courts. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734-735 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], cert. den. (1982) 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129].)

Consequently, when Eugene's children were made dependent children and removed from their parents' custody in 1981, termination of parental rights under subdivision (a)(2) of section 232 could have been ordered only if the children had been made dependents pursuant to subdivision (d) of section 300. Since the children were made dependents and removed from parental custody pursuant to section 300, *subdivision (b),* Eugene's parental rights could not have been terminated pursuant to the version of subdivision (a)(2) of section 232 extant when the children were adjudged dependents and removed from the home.

As we have recounted, effective January 1, 1984, subdivision (a)(2) of section 232 was amended to provide for termination of parental rights of the parent of any child, "Who has been neglected or cruelly treated by either or both parents, if the child has been a dependent child of the juvenile court under *any* subdivision of Section 300 of the Welfare and Institutions Code and the parent or parents have been deprived of the child's custody for one year prior to the filing of a petition pursuant to this section. Physical custody by the parent or parents for insubstantial periods of time shall not serve to interrupt the running of the one year period." (Stats. 1983, ch. 309, § 2, p. 904, italics added.) The trial court relied on the amended statute to terminate Eugene's parental rights by judgment entered March 5, 1984.

B. *The 1984 version of subdivision (a)(2) of section 232 was applied retroactively in this case.*

■ Eugene contends the application of the 1984 version of subdivision (a)(2) constitutes an "ex post facto law." This argument is without merit, for the ex post facto clauses of the federal and state Constitutions (U.S. Const., art. I, § 9, Cal. Const., art. I, § 9) apply only "to criminal statutes and penalties, not to civil statutes. [Citations.]" (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 161 [181 Cal.Rptr. 784, 642 P.2d 1305].) ■ Nevertheless, while the amended version of section 232 is not an ex post facto law, it does raise a related concern because of its retroactive application by the trial court.

The retroactive application of a statute is one that affects rights, obligations or conditions that existed before the time of the statute's enactment, giving them an effect different from that which they had under the previously existing law. (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743]; *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 613 [194 Cal.Rptr. 294]; *Fullerton Union High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 386 [188 Cal.Rptr. 897].) Legislation imposed retroactively applies "the new law of today to the conduct of yesterday." (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 836 [27 Cal.Rptr. 19, 377 P.2d 83]; followed in *Fox* v. *Alexis* (1985) 38 Cal.3d 621, 626 [214 Cal.Rptr. 132, 699 P.2d 309].)

We have no doubt the application of the newly amended version of subdivision (a)(2) of section 232 to allow termination of Eugene's parental rights was a retroactive one. By its terms, the amended version permitted termination of parental rights on expanded grounds. The amended statute provided that a wholly novel and potent substantive legal effect would be given to dependency adjudications, and to consequent deprivations of custody, under subdivisions of section 300 other than (d). Before the 1983 amendment dependency adjudications under subdivision (b) of section 300 could not result in the permanent severance of parental rights under subdivision (a)(2) of section 232; the amendment made the dependency adjudication a statutory ground for such severance. Since application of the 1984 statute to the 1981 dependency adjudication gave the adjudication and the consequent deprivation of custody substantive legal effects they did not previously have, the 1984 statute was applied retroactively in this case.

C. *The Legislature did not intend that the 1983 amendment of subdivision (a)(2) of section 232 (eff. Jan. 1, 1984) be given retroactive effect.*

■ The Legislature may make a law retroactive in its effect, but only when the intention to do so clearly appears. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 149 [23 Cal.Rptr. 592, 373 P.2d 640]; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865]; *Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497, 504-505 [38 Cal.Rptr. 77].) " 'It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' " (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 153, quoting *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; see *Perry* v. *Heavenly Valley* (1985) 163

Cal.App.3d 495, 500 [209 Cal.Rptr. 771].) The rule applies to an amendment to a statute. (*Cole, supra,* 43 Cal.3d at p. 153.)

▉ We can locate no clear legislative intent to apply the 1984 version of section 232, subdivision (a)(2) retroactively to allow termination of parents' rights where their children had previously been made dependents under subdivisions of section 300 other than subdivision (d).

1. *There is no express declaration of retroactivity.*

Our quest for legislative intent begins with the language of the amended statute. (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 734 [199 Cal.Rptr. 697].) Civil Code section 3 provides that "No part of [the Civil Code] is retroactive, unless expressly so declared." ▉ The rule applies to amendments to the Civil Code. (*Estate of Frees* (1921) 187 Cal. 150, 155 [201 P. 112].) ▉ The amended statute contains no express language providing for retroactivity. That would appear to settle the question, since, as this court has noted, "The Legislature is well acquainted with the rule requiring a clear expression of retroactive intent [citation], ..." (*Perry* v. *Heavenly Valley, supra,* 163 Cal.App.3d at p. 500.) But regrettably, things are not so simple.

▉ Civil Code section 3 has been definitively construed merely to embody "the common law presumption against retroactivity." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587, fn. 3.) Despite its apparent clarity, Civil Code section 3 "does not ... limit the search for such an express [retroactive] declaration to the statutory language itself. [Citation.]" (*Id.,* at p. 587, fn. 4.)[3] Consequently, even where the Civil Code is at issue, "A wide variety of factors may be relevant to our effort to determine whether the Legislature intended a new statute to be given retroactive effect. The context of the legislation, its objective, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction may all indicate the legislative purpose. [Citation.] An express declaration that the Legislature intended the law to be applied retroactively is not necessarily required. [Citation.]" (*Fox* v. *Alexis, supra,* 38 Cal.3d at p. 629; see *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal. Rptr. 172, 408 P.2d 948].)

▉ Nonetheless, while the absence of an express declaration of retroactivity by the Legislature is not controlling, it is "a significant indication it

---

[3] Could not the interminable disputes as to retroactivity be put to rest by a straightforward rule requiring the Legislature expressly to state, "This statute should be given retroactive application"? Would such a rule place an untoward burden on the Legislature?

did not intend to apply the amendment retroactively. [Citation.]" (*Perry* v. *Heavenly Valley, supra,* 163 Cal.App.3d at pp. 500-501.)

2. *Retroactivity is not clearly implied in the statutory language.*

Nor is retroactivity clearly implied in the language of the 1983 amendment of subdivision (a)(2) of section 232. The amended statute permits termination of parental rights where "the parent or parents have been deprived of the child's custody for one year prior to the filing of a petition pursuant to this section. . . ." At first glance, the statute would appear to contemplate retroactivity, since it does not expressly fix a point in time for "the filing of a petition pursuant to this section." Since such a petition could arguably be filed before 1984, and since the requisite year-long period of deprivations of custody must precede the filing of the petition, the foregoing language of the statute suggests the statute should be applied retroactively to allow all deprivations of custody occurring before 1984 to count as grounds for termination of parental rights.

However, this view puts the cart before the horse. It overlooks the fact that the crucial event necessarily preceding all other events, including deprivation of custody, is the dependency adjudication itself. The dependency adjudication is the vehicle by which the parents lose custody; the one-year period of loss of custody begins, at the earliest, with that adjudication. There is simply no language in the 1983 amendment of subdivision (a)(2) of section 232 manifesting a clear intent to apply its crucial amending language—"*under any subdivision of section 300*"—retroactively to pre-1984 dependency adjudications. If there is no legislative intent to apply the 1983 amendment retroactively to dependency adjudications,[4] then the one-year period of deprivation of custody must follow suit and must commence, at the earliest, on January 1, 1984. And the filing of a section 232 petition must come at the end of this train of events, like a caboose. That, we think, is the proper sequence of things under the amended statute.

3. *The legislative scheme requires prospective application of the amended statute.*

We also have an obligation to construe the amended version of subdivision (a)(2) of section 232 in harmony with other acts relating to the same subject matter. (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 932 [163 Cal.Rptr. 782, 609 P.2d 1]; *Fox* v.

---

[4]The 1983 amendment does not operate retrospectively with regard to dependencies established under section 300 subdivision (d). Those dependencies were included in the old statute and continue to be included in the amended statute applied prospectively.

*Alexis, supra,* 38 Cal.3d at p. 629; *California State Psychological Assn.* v. *County of San Diego* (1983) 148 Cal.App.3d 849, 855 [198 Cal.Rptr. 1].) Retroactive application of the amended statute would conflict with the statutory scheme of which it is a part.

The 1983 amendment of subdivision (a)(2) was part of a comprehensive restructuring of the law relating to dependency, foster care and permanent placement of minors and to the termination of parental rights. (See Stats. 1980, ch. 1229; Stats. 1982, ch. 978; Stats. 1983, chs. 309, 467; see generally, *In re John B.* (1984) 159 Cal.App.3d 268, 274-275 [205 Cal.Rptr. 321].) The revised statutory scheme provides for shorter foster care, more frequent reviews of placement, and earlier permanency planning. These changes were designed to enhance the stability of the lives of dependent children. (See §§ 366.2, 366.25, 396; see also *In re Laura F.* (1983) 33 Cal.3d 826, 832-833 [191 Cal.Rptr. 464, 662 P.2d 922].)

The new statutes also provided for the first time that parents shall be warned when their children are taken from their physical custody that, should they be unable to resume custody within 12 months, their parental rights could be terminated. (§ 361, as amended by Stats. 1982, ch. 978, § 20, pp. 3535-3536.) In addition, the scheme imposed the requirement that, at review hearings, the court must caution the parents that should the minor be unable to be returned to them by the next review, proceedings to terminate their rights might be initiated. (§ 366.2, as added by Stats. 1982, ch. 978, § 26, pp. 3539-3540.)

Retroactive application of the 1983 amendment conflicts with the obvious legislative desire that the expanded grounds of termination be accompanied by notice to parents that, barring improvement, severance of their rights may occur. When Eugene's children were made dependent children of the juvenile court and removed from their parents' custody, and when review hearings were conducted in the dependency proceedings,[5] notice could not have been given that continued dependency under subdivision (b) of section 300 could result in termination of parental rights under subdivision (a)(2) of section 232, since dependency under subdivision (b) of section 300 could not have led to such termination. Any such notice would have constituted wrong advice.

4. *The statute must be construed to avoid possible constitutional conflicts.*

We also have an obligation to construe the statute to avoid even possible constitutional conflicts. (*Building Industry Assn.* v. *City of Camarillo* (1986)

---

[5] All such hearings were conducted before 1984.

41 Cal.3d 810, 816 [226 Cal.Rptr 81, 718 P.2d 68]; *People* v. *Davenport* (1985) 41 Cal.3d 247, 266 [221 Cal.Rptr. 794, 710 P.2d 861].) ■ Retrospective application of a statute may offend principles of substantive due process of law. (See, e.g., *In re Marriage of Buol* (1985) 39 Cal.3d 751, 758-764 [218 Cal.Rptr. 31, 705 P.2d 354].) Here, a strong case for a substantive due process violation would be tendered by a retroactive application of the statute.

■ "The due process clauses of the state and federal Constitutions, in their 'substantive' aspect, provide checks on the government's power to act unfairly or oppressively." (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 51 [231 Cal.Rptr. 757]; see *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].)

■ The unfairness to Eugene in the retroactive application of the amended statute arises from a lack of notice of the consequences of the section 300 adjudication and of the resulting removal of the children from his custody. He simply could not have known that the dependency adjudication or the one-year deprivation of custody could result in the termination of his parental rights under subdivision (a)(2) of section 232 because the applicable statute said they could not.

Unfairness from a lack of notice is usually characterized as a *procedural* due process violation and is easily recognized when dressed in that garb. Thus, for example, the termination of Eugene's rights in the present circumstances is similar to the result condemned by this court in *In re Michael D.* (1981) 116 Cal.App.3d 237 [172 Cal.Rptr. 102]. At issue in that case was the validity of an order removing a child from its father's custody, entered nunc pro tunc. The order charged the father with notice that a termination action would be filed unless he could regain custody within 18 months. The order was required to start the statutory period running. That order was first made with 15 months of the 18-month notice period already expired. Characterizing the violation as one of procedural due process arising from failure to serve the order, we held that giving effect to the nunc pro tunc entry of the order would impose consequences of which the father could have had no notice under the governing statutes. (*Id.,* at pp. 244-245.) We said, "Retroactive notice is no notice at all." (*Id.,* at p. 245.)

Our Supreme Court has also recognized that procedural due process requires that a defendant have reasonable notice of the consequences of litigation. Thus, in *Becker* v. *S.P. V. Construction Co.* (1980) 27 Cal.3d 489

[165 Cal.Rptr. 825, 612 P.2d 915], the court reversed a default judgment that awarded plaintiff an amount greater than that sought in the complaint. The court held fundamental fairness requires that before a default is entered, the defendant must be given notice of the damages demanded so that his choice to default can be made with an appropriate incentive to contest the suit and with knowledge of the most extreme consequences. "If no specific amount of damages is demanded, the prayer cannot insure adequate notice of the demands made upon the defendant." (*Id.,* at p. 494.)

The same unfairness that prompted the decisions in *Michael D.* and *Becker* is present here. Faced with the decision whether to contest the section 300 proceeding or to press for a return of custody of the children, Eugene could not have evaluated the consequences of forbearing. Here, however, the lack of notice is not due to the failure of authorities to serve Eugene with a document giving him notice. Rather, lack of notice is inherent in the retroactive application of the statute itself and arguably constitutes a violation of substantive due process of law. (See *In re Marriage of Buol, supra,* 39 Cal.3d at p. 759; see also *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269-270 [198 Cal.Rptr. 145, 673 P.2d 732] [failure of criminal statute to provide "fair notice" violates due process].)

Although, as we have mentioned, we need not reach the question of the constitutionality of the retroactive application of the amended statute, we note that, "The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer* v. *Nebraska,* 262 U.S. 390, 399 [67 L.Ed. 1042, 1045, 43 S.Ct. 625, 9 A.L.R. 1446] (1923), 'basic civil rights of man,' *Skinner* v. *Oklahoma,* 316 U.S. 535, 541 [86 L.Ed. 1655, 1660, 62 S.Ct. 1110] (1942), and '[r]ights far more precious ... than property rights,' *May* v. *Anderson,* 345 U.S. 528, 533 [97 L.Ed. 1221, 1226, 73 S.Ct. 840] (1953)." (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208]; see *In re Carmaleta B., supra,* 21 Cal.3d at p. 489; *In re B.G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244].) Moreover, the Legislature has identified no important state interest that would serve to justify the unfairness to parents inherent in the retroactive application of the 1983 amendment. (See *In re Marriage of Buol, supra,* 39 Cal.3d at p. 761; cf., e.g., Civ. Code, § 4800.1, subd. (a).)

We therefore conclude the 1983 amendment of subdivision (a)(2) of section 232 may be applied prospectively only. This means section 232, subdivision (a)(2) precludes termination of parental rights where a child was made a dependent under any subdivision of section 300 other than subdivision (d) before January 1, 1984, unless, since that date, the parents have

been given a reasonable opportunity to have the government prove the need for dependency status. The one-year period of deprivation of parental custody required by subdivision (a)(2) of section 232 must follow the dependency adjudication.

D. *A status review hearing pursuant to sections 366-366.2 may qualify as a sufficient dependency adjudication to satisfy subdivision (a)(2) of section 232.*

■ Does this mean that parents whose children were made dependents before 1984 under subdivisions of section 300 other than (d) are forever immune from termination of parental rights? Or that local authorities must dismiss and refile such section 300 cases after 1984 to obtain a dependency adjudication qualifying for termination under subdivision (a)(2) of section 232? In most cases, the answer is "No." We cannot believe the Legislature intended such results. We conclude the Welfare and Institutions Code itself provides a statutory scheme capable of providing the requisite fairness to parents without requiring dismissals and refilings of dependency cases.

The Welfare and Institutions Code mandates that the dependent status of a child removed from parental custody must be reviewed by the court no less frequently than once every six months until a permanency planning hearing is completed. (§ 366, subd. (a).) Each such status review hearing entails a renewed adjudication of the conditions justifying the dependency status of children. (§ 364, subd. (c).) The burden is on the probation department to establish the continuing need for dependency status by a preponderance of evidence. (*Ibid.*) The requirements of giving parents notice of such a hearing (§ 366.2, subd. (b)) are substantially similar to those provided for the initial jurisdictional hearing (§ 337, subd. (a)) in that both hearings require notice to be served personally or by certified mail. At such a review hearing, the court is required to inform a parent or guardian who appears that if the minor cannot be returned home by the next review hearing, a section 232 proceeding may be instituted. (§ 366.2, subd. (e).)

In short, provided the court has complied with its statutory duty to give parents notice that failure to regain custody could lead to termination of parental rights (see §§ 361, 366.2, subd. (e)), a review hearing is the functional equivalent of an original jurisidictional hearing. We see no reason why such status review hearings occurring after January 1, 1984, should not be treated as dependency adjudications for purposes of the 1983 amendment of section 232, subdivision (a)(2). After the effective date of the 1983 amendment, the statute gives parents notice that a dependency adjudication

under subdivisions of section 300 other than (d) can lead to termination of parental rights. Thus, where the conditions of section 232 are otherwise satisfied, we see no impediment to terminating the rights of parents under subdivision (a)(2) of section 232 at least one year following a status review hearing such as we have described.[6]

Here, both the dependency adjudication and the one-year period of deprivation of custody used to terminate Eugene's parental rights occurred before 1984. This use violated subdivision (a)(2) of section 232. So far as the record discloses, no status review hearing was held in the dependency case after January 1, 1984. Eugene never got notice that under the 1983 amendment the dependent status of his children could lead to the termination of his parental rights under subdivision (a)(2) of section 232. ▪▪▪ ▪ ▪▪ As a consequence, we must reverse the section 232 judgment and remand this case for a new adjudication of dependency that affords him notice of the expanded grounds of termination under the 1983 amendment of section 232, subdivision (a)(2).[7]

## II*

. . . . . . . . . . . . . . . . . . . . . . .

---

[6] The question has not been tendered and we do not decide from what date evidence to support any *future* finding of cruelty or neglect may be considered.

[7] For the benefit of the trial court on remand we address Eugene's remaining contentions of error in the section 232 action. Eugene argues he was never properly cited to appear in the section 232 trial. He is wrong. The court properly ordered the citation served by publication. Eugene appeared at the trial by his appointed counsel. No defect in service was claimed at trial. There is no merit in this contention.

Eugene also contends he was entitled to court funds to enable him to travel from Illinois to California and attend the trial. However, we have been cited no authority allowing public funds to be spent in this manner. A request for such funds need not be granted.

Eugene also argues that public policy prevents the affirmance of the judgment which severed his parental rights because to do so would reward "child stealing." (See Pen. Code, § 278.5.) The purpose of Penal Code section 278.5 "is to provide for criminal sanctions for violations of custody and visitation orders." (*People* v. *Lortz* (1982) 137 Cal.App.3d 363, 369 [187 Cal.Rptr. 89].) Eugene concedes there was no proof of an extant custody or visitation order in the Illinois state courts when Georgia moved with the children to California. Thus, there was no showing of child abduction; his argument must fail. Eugene asserts the dependency petitions were sustained on the basis of Georgia's conduct only, and as a result the trial court erred by terminating his rights, since Georgia's conduct at the time of the trial did not warrant termination of her rights. He further asserts he was never notified that if Georgia's conduct and ability to care for the children improved, his own rights could still be terminated. No authority is cited for these propositions, nor is any discernable argument raised. We need consider them no further. (*Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72]; *People* v. *Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906].)

* See footnote, *ante,* page 771.

## Disposition

The judgment is reversed.

Puglia, P. J., and Blease, J., concurred.

On July 2, 1987, the opinion was modified to read as printed above.