TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-512 |
| of | : | |
| | : | JULY 27, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE LYLE C. ROSE, COUNTY COUNSEL, PLACER COUNTY, has requested an opinion on the following question:

Is a person eligible for permanent absent voter status without having one of the disabling conditions specified in Elections Code section 1451?

CONCLUSION

A person is not eligible for permanent absent voter status without having one of the disabling conditions specified in Election Code section 1451.

ANALYSIS

Prior to 1978 the Elections Code[1] provided for absentee voting for specific reasons such as illness, absence from the precinct on election day, or physical handicap. (See Stats. 1976, ch. 1275, § 18.) In 1978 section 1003 was amended to provide that an "absentee ballot shall be available to any registered voter." (Stats. 1978, ch. 77, § 2.) The general procedures adopted for obtaining an absentee ballot (§§ 1002-1018) apply to a single election, with each election requiring a new application.

In 1982 sections 1450 through 1456 were enacted (Stats. 1982, ch. 1422, § 4) to provide for "permanent absent voters." Section 1450 provides: "A voter, who qualifies under the provisions of this chapter, shall be entitled to become a permanent absent voter." Section 1451 sets forth the qualifications for permanent absent voter status:

---

[1]All unidentified section references hereafter are to the Elections Code.

"Any voter who has lost, or has lost the use of, one or more limbs; has lost, or has lost the use of, both hands; is unable to move about without the aid of an assistant device (e.g., canes, crutches, walker, wheelchair); is suffering from lung disease, blindness, or cardiovascular disease; has a significant limitation in the use of the lower extremities; or is suffering from a diagnosed disease or disorder which substantially impairs or interferes with the person's mobility may apply for permanent absent voter status. Application for permanent absent voter status shall be made in accordance with Section 1002. The voter shall complete an application, which shall be available from the county clerk, and which shall contain:

"(1) Voter's name at length.

"(2) Voter's residence address.

"(3) Address where ballot is to be mailed, if different from the place of residence.

"(4) Information which establishes the voter's right to permanent absent voter status.

"(5) The signature of the applicant."[2]

Section 1452, the subject matter ot this opinion, provides an alternative to section 1451. It states:

"In lieu of executing the application set forth in Section 1451, *any voter* may execute a request for permanent absent voter status by making a written request to the county clerk requesting the status. If a written request is received by the county clerk and it contains the information set forth in Section 1451, the clerk shall process that application in the manner provided in Section 1453." (Emphasis added.)

The question presented for resolution is whether section 1452 permits a voter to apply for permanent absent voter status without having any disabling condition, whereas section 1451 clearly specifies a disabling condition as a prerequisite to such status. We conclude that section 1452 does not so authorize.

Our interpretation of the provisions of sections 1451 and 1452 may be guided be several well-established rules of statutory construction. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "Legislative intent should be gathered from the whole statute or act rather than from isolated parts or words." (*California State Psychological Assn.* v. *County of San Diego* (1983) 148 Cal.App.3d 849, 855.) "`Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "It is a well-settled principle of statutory interpretation that the various parts of a statute must be considered as a whole to avoid absurd or anomalous results by harmonizing any apparently conflicting provisions; and thus, a particular part of a statutory enactment must be viewed in light of the enactment in its entirety." (*Rao* v. *Campo* (1991) 233 Cal.App.3d 1557, 1567.) "A construction [of a statute] rendering some words surplusage is to be avoided." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 270.)

---

[2]Section 1002 requires the application to "be signed by the applicant and . . . show his place of residence."

Applying these rules, we believe that section 1451 is intended to provide a procedure for applying for permanent absent voter status by means of a *formal* application; the purpose of section 1452 is to provide an alternative procedure for doing so *informally*. This limiting construction of section 1452 is apparent from reading the second and third sentences in section 1451 and then reading section 1452 as a whole.

Only if the first sentence of section 1452 is read in isolation may it be urged that "any voter" with or without a disabling condition could qualify for absent voter status. Such a reading of the first sentence, however, renders much of the second sentence of the statute surplusage. Furthermore, it is evident that the second sentence qualifies the first sentence, since the clerk is to process the written application only if it "contains the information set forth in section 1451 . . . ." Section 1451 requires "[i]nformation which establishes the voter's right to permanent absent voter status," i.e., specification of the voter's disabling condition.

Our construction of the statutory language is supported by the legislative history of Assembly Bill 350, 1981-1982 Regular Session, which added sections 1450 through 1456. We have examined the committee reports and analyses of the bill along with other matters. The documents disclose a legislative intent to restrict permanent absentee voter status to those who have one of the disabling conditions specified in section 1451.

We therefore conclude that a person is not eligible for permanent absent voter status unless he or she has one of the disabling conditions specified in section 1451.

\* \* \* \* \*