[No. D029764. Fourth Dist., Div. One. Feb. 13, 1998.]

DARIA D. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Real
Party in Interest.

**[Opinion certified for partial publication.¹]**

¹Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Timothy A. Chandler, Alternate Public Defender, Jacqueline C. Crowle and Priscilla Castillo, Deputy Alternate Public Defenders, and Russell L. Miller for Petitioners.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Real Party in Interest.

## OPINION

**NARES, J.**—Daria D. and Vincent D. seek review of the court's orders terminating reunification services and scheduling a selection and implementation hearing. We issued an order to show cause and offered the parents oral argument, which was declined. After a review on the merits, we hold that Welfare and Institutions Code sections 361.5, subdivision (a)(2) and 366.21, subdivision (e),[2] which allow termination of reunification services at the six-month stage where the child is under three years of age at the time of initial removal, are constitutional.[3] We also reject the parents' insufficiency of evidence and other claims, and accordingly deny the petitions.

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]This is apparently a matter of first impression.

## BACKGROUND

Daria and Vincent are addicted to heroin. Casey was born to them prematurely on December 26, 1996, showing signs of drug withdrawal. She tested positive for methadone, heroin and morphine. Vincent admitted a history of drug use and his failure to stop Daria from using drugs during her pregnancy. A petition was filed on Casey's behalf, and the parents were provided with reunification plans focusing on drug treatment and abstinence.

At the six-month review hearing, the court found by clear and convincing evidence that the parents failed to regularly participate in court-ordered services, return of Casey to them would create a substantial risk of detriment, and there was no substantial probability she could be placed with them by the twelve-month date, which by then was only about two months away. Consequently, it terminated reunification services and set a selection and implementation hearing under section 366.26.

## DISCUSSION

### I

### *Constitutional Challenges*

Before January 1, 1997, parents of dependent children were generally entitled to a minimum of 12 months of reunification services. (Former § 361.5, subd. (a).) However, under section 361.5, subdivision (a)(2), effective January 1, 1997, services shall not exceed six months if the child is under three years of age on the initial removal date, unless the court finds there is a substantial probability the child can be returned to the parents' custody within an extended twelve- or eighteen-month period. Under section 366.21, subdivision (e), also effective January 1, 1997, the court may on the six-month review date schedule a selection and implementation hearing under section 366.26 if it finds by clear and convincing evidence that the parents failed to regularly participate in reunification services.

Daria contends these provisions violate her constitutional substantive due process and equal protection rights.[4] ▆▆ Our Supreme Court has discussed constitutional rights in the juvenile dependency context as follows:

"The federal and state Constitutions guarantee that no state shall deprive any person of life, liberty or property without due process of law. [Citation.]

[4]San Diego County Department of Social Services' contention Daria waived her constitutional arguments by failing to raise them below is incorrect. (See *People* v. *Vera* (1997) 15 Cal.4th 269, 276-277 [62 Cal.Rptr.2d 754, 934 P.2d 1279].)

A parent's interest in the companionship, care, custody and management of his children is a compelling one, ranked among the most basic of civil rights. [Citation.] Likewise, natural children have a fundamental independent interest in belonging to a family unit [citation], and they have compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. [Citation.] The interests of the parent and the child, therefore, must be balanced.

■ "Substantive due process prohibits governmental interference with a person's fundamental right to life, liberty or property by unreasonable or arbitrary legislation. [Citation.] In substantive due process law, deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law must have a reasonable and substantial relation to the object sought to be attained. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306-307 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

■ "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.]" (*In re Marilyn H., supra,* 5 Cal.4th at p. 307.)

■ It is critical to secure stable placement for a dependent child as soon as possible, consistent with the parents' rights. (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 844 [278 Cal.Rptr. 185].) Conversely, a child's need for permanency and stability cannot be delayed for an extended time without significant detriment. (*In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080 [261 Cal.Rptr. 903].) In considering requests for continuances, the court "shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).)

The stated purpose of the new six-month provisions is to give juvenile courts greater flexibility in meeting the needs of young children, "in cases with a poor prognosis for family reunification, (e.g., chronic substance abuse, multiple previous removals, abandonment, and chronic history of mental illness)." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1524

(1995-1996 Reg. Sess.) as amended May 20, 1996, p. 4.) According to the sponsor, the California Department of Social Services, "very young children . . . require a more timely resolution of a permanent plan because of their vulnerable stage of development. . . . [G]iven the unique developmental needs of infants and toddlers, moving to permanency more quickly is critical." (*Ibid.*)

The six-month provisions must be viewed in light of the entire dependency scheme. (*In re Marilyn H., supra,* 5 Cal.4th at p. 307; *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 253 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) ■ As the Supreme Court has explained, "[s]ignificant safeguards have been built into the current dependency scheme. They include representation by counsel to assist parents at every stage of the proceedings [citation], notice of all hearings and rights [citations], clear and convincing evidence for removal from custody [citation], reunification services [citation], and review hearings at which services and progress are reviewed [citations]." (*Id.* at pp. 307-308.) Additionally, the parents have the assistance of a social worker, and throughout the reunification period and thereafter, they may petition the court for modification of any of its orders based upon changed circumstances or new evidence. (§ 388.)

■ Sections 361.5, subdivision (a)(2) and 366.21, subdivision (e) merely provide the court with the option to terminate reunification efforts after six months where the parents have made little or no progress in their service plans and the prognosis for overcoming the problems leading to the child's dependency is bleak. When construed with the legislative scheme as a whole, we conclude the expedition of permanency planning for very young children is reasonable and bears a substantial relation to the legitimate objective of dependency law. The previous law made no age distinction, and infants and toddlers—who unlike older children may have at best a limited relationship with their parents—were required to remain in temporary foster care for at least one year even where the parents shunned reunification efforts.

Further, the parents' interests are adequately protected. In addition to the safeguards noted above, where the child is under three at the initial removal date, the court must caution the parents that their failure "to participate regularly in any court-ordered treatment programs or to cooperate or avail [themselves] of services provided as part of the child welfare services case plan may result in a termination of efforts to reunify the family after six months." (§ 361.5, subd. (a)(2).) There is a statutory presumption at the six-month hearing that the child will be returned to parental custody unless the court finds by a preponderance of the evidence that return "would create

a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the minor." (§ 366.21, subd. (e).) Department bears the burden of establishing detriment. (*Ibid.*)

Additionally, the court may not schedule a section 366.26 selection and implementation hearing at the six-month stage unless it finds by clear and convincing evidence the parents failed to regularly participate in reunification services. Even absent compliance, however, the court must continue the case if it finds "a substantial probability that the minor . . . may be returned to his or her parent . . . within six months or that reasonable services have not been provided[.]" (§ 366.21.) Under all the circumstances, we are satisfied that services may be terminated at the six-month stage only when "parental unfitness is so well established that there is no longer 'reason to believe that positive, nurturing parent-child relationships exist' [citation], and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished." (*Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at p. 256, citing *Santosky* v. *Kramer* (1982) 455 U.S. 745, 766 [102 S.Ct. 1388, 1401-1402, 71 L.Ed.2d 599].)

Viewed as an equal protection claim, Daria's argument is that the classification of parents with dependent children into those provided with reunification services for six months and those provided with services for twelve months, is invidious and discriminatory. ▆ "The equal protection clause requires some rationality in the nature of the class singled out and requires that the distinctions drawn have ' "some relevance to the purpose for which the classification is made." ' [Citations.]" (*In re Christina A., supra,* 213 Cal.App.3d at p. 1079.) ▆ For the reasons discussed above, we conclude the six-month provisions have no improper purpose. Rather, the truncated time frame is an acknowledgment that where parents fail to regularly participate in reunification services from the outset, despite a warning services may be discontinued absent compliance, a very young child's needs for permanency and stability cannot be postponed without significant detriment.

## II

### Retroactivity

▆ Daria also contends the court erroneously applied the six-month provisions retroactively, since the January 15, 1997, petition was sustained on the basis of her drug use before Casey's December 26, 1996,

birth.[5] ██ "The retroactive application of a statute is one that affects rights, obligations or conditions that existed before the time of the statute's enactment, giving them an effect different from that which they had under the previously existing law. [Citations.]" (*In re Cindy B.* (1987) 192 Cal.App.3d 771, 779 [237 Cal.Rptr. 677].) " 'It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' [Citation.]" (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743].)

██ We conclude the court did not apply the new laws retroactively. Contrary to Daria's position, the critical date is not when the acts giving rise to the petition occurred, but when the child was initially removed from the parents' custody.[6] (§ 361.5, subd. (a)(2).) "It is well settled that '[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence before the enactment.' [Citation.]" (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 613 [194 Cal.Rptr. 294].) If initial removal occurred on or after January 1, 1997, the new six-month provisions apply. Such was the case here.

## III

### *Sufficiency of Evidence**

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The petitions are denied.

Kremer, P. J., and Huffman, J., concurred.

---

[5]Daria did not raise this issue at the juvenile court. However, we exercise our discretion to consider it as it is solely one of law. (*San Francisco Unified School Dist.* v. *San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 151, fn. 1 [272 Cal.Rptr. 38].)

[6]The ex post facto clauses of the United States and California Constitutions (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9) provide that persons have a right to fair warning of conduct that will give rise to criminal penalties. The clauses do not apply to dependency proceedings, which are civil in nature. (*In re Cindy B., supra,* 192 Cal.App.3d at p. 778.)

*See footnote 1, *ante,* page 606.