[No. F029859. Fifth Dist. July 14, 1998.]

In re DYLAN T., a Person Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and
Respondent, v.
JAMIE T., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## Counsel

Stephanie A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

B. C. Barmann, Sr., County Counsel, and Tom Clow, Deputy County Counsel, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, J.**—Dylan T. was declared to be a dependent child of the court. At the dispositional hearing, the trial court ordered that there be no visits between Dylan and his mother, Jamie, while Jamie was incarcerated. Dylan's tender age alone, reasoned the trial court, justified the order of no visitation with the mother while she was incarcerated. In this appeal, we are called upon to determine whether a finding of detriment to a minor visiting an incarcerated parent can be based on age without any further showing. We determine it cannot.

### Facts and Proceedings

Jamie T. is the mother of Dylan T. (date of birth: Sept. 19, 1996). On September 23, 1997, a Welfare and Institutions Code section 300[1] dependency petition was filed seeking to declare Dylan a dependent child of the court after Jamie was arrested and jailed for possession of a controlled substance. The trial court found true the allegations that Jamie had failed to protect Dylan because of her substance abuse (§ 300, subd. (b)) and that there was no provision for Dylan's support due to Jamie's incarceration (§ 300, subd. (g)).[2] The court ordered that visits are not permitted if Jamie is incarcerated.

---

[1] All future code references are to the Welfare and Institutions Code.
[2] The identity of Dylan's father is unknown.

A report was prepared for the dispositional hearing. The report stated that in November of 1997, Jamie was convicted of possession of a controlled substance and was sentenced to one year in jail. If approved by the probation department, Jamie could be released from jail to an in-patient residential treatment program. Regarding visitation the social service worker noted that Jamie was incarcerated at the Kern County jail at Lerdo (the Lerdo Facility) and stated, "[t]he undersigned believes that due to the minor's young age that visits while the mother is incarcerated would be detrimental to the minor." Visits were recommended after Jamie's release; the worker also recommended that family reunification services be provided to Jamie.

The dispositional hearing was held on December 15, 1997. Counsel for Jamie made the following statement at the hearing:

"We are prepared to submit it upon the report and the recommendation with one exception and that is with respect to visits while she's in custody.

"My client is actually serving a commitment at the Lerdo Facility and she's on the farm. Visitation under those circumstances is open visitation in an open area of the Lerdo Facility and in light of the fact that this matter is under the six month rule, I think that it would be incumbent, actually, it's absolutely necessary that my client have regular contact with the minor if reunification is at all possible.

"Her current commitment is at most until May of 1998. She is eligible for residential treatment program and that may be affected [sic] sometime in January.

"I would ask that at the very least, while she is in custody at the Lerdo Facility, that she have one visit a month."

County counsel reiterated the conclusion of the social service worker that visits would not be in the minor's best interests due to the minor's age.

The trial court adjudged Dylan a dependent child of the court and ordered the reunification plan into effect. The court made the following order regarding visitation: "I'm going to order as follows, no visits are permitted while the parent is incarcerated and the Court finds based upon the minor's age, visits while incarcerated are not in the minor's best interest. However, if the mother is transferred to an inpatient drug treatment rehabilitation program, visits are to occur one time per month, supervised by the Department or its designee, not to exceed one hour."

## DISCUSSION

### I.

█ Jamie claims the trial court abused its discretion when it refused all jail visitation with her solely because of Dylan's age. Jamie argues that visits with her son were critical to the issue of reunification, it was not shown that visits with Dylan while she was incarcerated would be detrimental to him, and the trial court failed to make an informed decision on the question of visitation.

█ Respondent initially argues that this issue is moot because Jamie has been released from the Lerdo Facility and is in a residential treatment program; therefore she is no longer subject to the restriction that visitation shall not occur while she is incarcerated. Respondent has filed with this court an application to produce additional evidence to show that Jamie is no longer incarcerated.

The question of mootness must be decided on a case-by-case basis. (*In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518 [22 Cal.Rptr.2d 443].) An issue is not moot if the purported error infects the outcome of subsequent proceedings. (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [30 Cal.Rptr.2d 10].)

"The absence of visitation will not only prejudice a parent's interests at a section 366.26 hearing but may 'virtually assure[] the erosion (and termination) of any meaningful relationship' between mother and child." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 307 [36 Cal.Rptr.2d 910].) We accept, for the sake of argument, that Jamie was released from the Lerdo Facility in February, placed in a residential treatment program, and allowed some visits with Dylan since her release. Her release does not alleviate all damage from the purported error. Jamie has been denied visitation, because of Dylan's young age, since she was incarcerated in September of 1997. Her relationship with Dylan was subject to erosion during this time. Also, although she was released to a residential in-patient program, she remains subject to incarceration. If reincarcerated, she would again suffer the consequence of no visitation. Finally, because Dylan was under the age of three when he was removed from Jamie's custody, his case is on the dependency "fast track." Recently enacted sections 361.5, subdivision (a)(2) and 366.21, subdivision (e) provide the court with the option to terminate reunification efforts after six months.

"The stated purpose of the new six-month provisions is to give juvenile courts greater flexibility in meeting the needs of young children, 'in cases

with a poor prognosis for family reunification, (e.g., chronic substance abuse, multiple previous removals, abandonment, and chronic history of mental illness).' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1524 (1995-1996 Reg. Sess.) as amended May 20, 1996, p. 4.) According to the sponsor, the California Department of Social Services, 'very young children . . . require a more timely resolution of a permanent plan because of their vulnerable stage of development . . . [G]iven the unique developmental needs of infants and toddlers, moving to permanency more quickly is critical.' (*Ibid.*)" (*Daria D.* v. *Superior Court* (1998) 61 Cal.App.4th 606, 611-612 [71 Cal.Rptr.2d 668].) Because reunification efforts could be terminated after six months, the lack of all opportunity for visitation during a significant portion of this time is an error which could infect the outcome of subsequent proceedings. The purported error is not moot.[3]

 Case law has established that in dependency proceedings, absent certain circumstances, visitation must be provided to the incarcerated parent. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1010 [57 Cal.Rptr.2d 861].) Statutory law sets forth visitation requirements in dependency proceedings.

Section 362.1 is the general visitation statute. It provides in pertinent part:

"In order to maintain ties between the parent or guardian and any siblings and the minor, and to provide information relevant to deciding if, and when, to return a minor to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a minor in foster care, and ordering reunification services, shall provide as follows:

"(a) For visitation between the parent or guardian and the minor. Visitation shall be as frequent as possible, consistent with the well-being of the minor. No visitation order shall jeopardize the safety of the minor. To protect the safety of the minor, the court may keep the minor's address confidential."

Section 361.5 sets forth the requirements for family reunification services for the incarcerated parent. It provides in pertinent part:

"(e)(1) If the parent or guardian is incarcerated or institutionalized, the court shall order reasonable services unless the court determines, by clear

---

[3]According to county counsel, visitation is routinely refused in Kern County dependency cases when the child is of a young age. If this is true, the issue is one of continuing public importance. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 74, fn. 5 [23 Cal.Rptr.2d 775, 859 P.2d 1290].)

and convincing evidence, those services would be detrimental to the minor. In determining detriment, the court shall consider the age of the minor, the degree of parent-child bonding, the length of the sentence, the nature of the treatment, the nature of crime or illness, the degree of detriment to the minor if services are not offered and, for minors 10 years of age or older, the minor's attitude toward the implementation of family reunification services, and any other appropriate factors. Reunification services are subject to the 18-month limitation imposed in subdivision (a). Services may include, but shall not be limited to, all of the following:

"(A) Maintaining contact between parent and minor through collect telephone calls.

"(B) Transportation services, where appropriate.

"(C) Visitation services, where appropriate.

"(D) Reasonable services to extended family members or foster parents providing care for the minor if the services are not detrimental to the minor.

"An incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as part of the service plan if these programs are available."

In *In re Brittany S.* (1993) 17 Cal.App.4th 1399 [22 Cal.Rptr.2d 50], reunification services were ceased and the trial court terminated Sheri's parental rights to Brittany. Sheri appealed, claiming the reunification services offered to her, as an incarcerated parent, were not appropriate or reasonable. The appellate court agreed.

"[A] parent's failure to comply with the service plan almost invariably leads to termination of parental rights. If a parent cannot avail himself or herself of reunification services because of incarceration, it is a fait accompli that the parent will fail to comply with the service plan. That is what occurred here. While 'use a gun, go to prison' may well be an appropriate legal maxim, 'go to prison, lose your child' is not. We therefore reverse the judgment." (17 Cal.App.4th at p. 1402.)

The appellate court found that the most obvious problem with Sheri's service plan was the failure to provide for visitation.

"Sheri spent almost all of her time leading up to the 12-month review hearing incarcerated in facilities that were less than 40 miles from where

Brittany lived; and yet, the service plan limited contact to telephone calls and letters. Although one provision of subdivision (e)(1) states that a service plan may include '[m]aintaining contact between parent and child through collect phone calls' (subd. (e)(1)(A)), the plan should also include '[v]isitation services, where appropriate.' (Subd. (e)(1)(C).) We fail to see how visitation could not have been appropriate when Sheri was incarcerated at either county jail or Frontera.[7] Particularly where the child is young (and Brittany was two to three years of age during the pertinent time period), limiting contact to letters and telephone calls should be used only as a last resort. By not providing visitation, SSA [Orange County Social Services Agency] virtually assured the erosion (and termination) of any meaningful relationship between Sheri and Brittany." (17 Cal.App.4th at p. 1407, fn. 8 omitted.) Footnote 7 of the above passage states: "We simply cannot agree with the following provision of the revised service plan: 'Due to the minor's tender age and the distance to California [sic] Institute from the minor's home, a visitation schedule more frequent than every three months would create an undue hardship for the minor.' First of all, as mentioned above, the 'distance' was only 36 miles. Second, the lack of personal contact with her mother created at least as much of an 'undue hardship' on Brittany as limiting contact to telephone calls and letters. Third, the service plan seems to contemplate visitation every three months following Sheri's transfer to Frontera; that, of course, did not happen."

The trial court in *In re Christopher H., supra,* 50 Cal.App.4th 1001, ordered that the incarcerated father have reasonable visitation while he was incarcerated. The father appealed, claiming the trial court's order of reasonable visitation during his incarceration constituted an unlawful delegation of the power to set visitation to the department of social services. On appeal, we found the order was not an unlawful delegation of power and stated:

"The court's order of 'reasonable' visitation was appropriate under the circumstances. Christopher was a seven-and-one-half-month-old baby with significant health problems who was scheduled to begin a series of surgeries necessary to repair his cleft lip and palate. Visitation, particularly while appellant is incarcerated in Wasco, will have to be scheduled around Christopher's medical care and health status. What constitutes 'reasonable' visitation in light of appellant's need for contact with Christopher and Christopher's best interests will vary.

"Moreover, the order for 'reasonable' visitation must be read in light of statutory mandates prescribing visitation between parent and child 'as frequent as possible, consistent with the well-being of the minor' (§ 362.1, subd. (a)) and visitation between the incarcerated parent and his or her child

'where appropriate' (§ 361.5, subd. (e)(1)(C)). The order must also be read in light of case law reiterating that visitation must be provided to the incarcerated parent. [Citations.] Under these mandates, the DSS [department of social services] cannot arbitrarily determine that visitation between appellant and Christopher during appellant's incarceration is 'unreasonable' or not acceptable." (50 Cal.App.4th at p. 1010.)

In *In re Jonathan M.* (1997) 53 Cal.App.4th 1234 [62 Cal.Rptr.2d 208] the appellate court found that a 50-mile geographical limitation on the visitation component of the reunification plan of an incarcerated parent was arbitrary under section 361.5 and must be set aside.

"The Legislature has listed the chief factors to consider in the detriment assessment in the statute itself: the minor's age, the degree of bonding between parent and child, the length of the parent's sentence or the nature of her treatment, the 'nature of the crime or illness,' the detriment to the minor if services are not offered, the views of minors 10 years of age or older, and *'any other appropriate factors.'* (Italics added.) But because this last phrase is set off by a comma, we assume it was intended to modify all the preceding phrases. Consequently, distance or difficulty of travel could certainly be considered as *factors* with respect to transportation and visitation services.

"But the way the statute is drafted, distance cannot stand on its own, as do the specific phrases mentioned ahead of the words, 'other appropriate factors.' And this makes perfect sense. An incarcerated parent located one mile past the court's fifty-mile order should clearly be treated equally with a parent one mile closer. A parent convicted of a violent crime against the child might be denied reunification services entirely, no matter how close the child lived to the prison. A child who has one parent serving a life sentence without possibility of parole ten miles away should hardly receive more visitation than the child's other parent serving a six-month sentence sixty miles away. In short, the court may not abdicate its responsibility to create a reasonable visitation and transportation order by the simple talisman of a mileage limitation." (53 Cal.App.4th at pp. 1237-1238.)

What can be gleaned from these cases is that visitation between an incarcerated parent and a minor cannot be arbitrarily determined based on factors which do not show by clear and convincing evidence that visitation would be detrimental to the minor.

Although dictum in *In re Jonathan M., supra,* 53 Cal.App.4th at page 1237 suggests that a specifically listed factor in section 361.5, subdivision (e)(1) could stand on its own as a reason to deny visitation, the particular factor of

the minor's age, without some supporting evidence demonstrating how the age of the minor resulted in detriment when visiting the incarcerated parent, cannot be utilized by itself to deny visitation. The court must consider each listed factor and any other additional factors when it determines detriment. Any one factor or combination of factors might result in a finding of detriment, but it must be shown by clear and convincing evidence how the factor or factors result in a detriment.

Throughout the Welfare and Institutions Code the Legislature repeatedly saw fit to enact statutes with various age limitations. (See, e.g., §§ 300, subd. (e), 317, subd. (e), 353.1, subd. (b), 361.2, subd. (e)(6), 361.5, & 366.21.) If the Legislature believed visitation with an incarcerated parent by a child of a young age would be detrimental based on age alone, it could have set forth an age restriction or at the least set forth some sort of presumption that visitation of an incarcerated parent by a child under the age of two years, as an example, is presumed to be detrimental unless shown otherwise. Its failure to set forth either indicates that there should not be a blanket restriction on visitation based solely on age. ■ " 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406].)

■ It must be demonstrated by clear and convincing evidence that visitation with the incarcerated parent would be detrimental to the minor. Respondent contends the following factors and reasonable inferences to be drawn from them provide clear and convincing evidence that the well being of Dylan would best be served by prohibiting visits between Jamie and her son while she was incarcerated.

"(i) The minor's age was one year and three months. . . .

"(ii) Appellant was currently incarcerated at the Kern County Lerdo Facility. . . .

"(iii) The visitation area for that facility is a large open-air area. . . .

"(iv) Although appellant was sentenced to one year in the county jail, appellant's commitment would not extend past May, 1998. . . .

"(v) Appellant would be eligible to be placed in a residential rehabilitation program as early as January, 1998. . . .

"(vi) The social worker responsible for the social study and reunification plan had recommended prohibiting visitation during appellant's incarceration."

Except for factors (i) and (ii) above, respondent does not discuss how those factors bear on the question of a finding of detriment.

Respondent argues the inferences from factors (i) and (ii) as follows: "Lerdo is a county jail. Commitment limitations produce a constantly changing inmate population. The general health of a prison population is significantly worse than the general population. Incidents of serious diseases including, but by no means limited to, hepatitis, tuberculosis and AIDS, is much higher in Lerdo than in the general population. Every inmate, employee and visitor to Lerdo has a far greater risk of being exposed to communicable disease and illness than is experienced in the general population. Being exposed to Lerdo's inmate population is not conducive to anyone's well being, but particularly not to those most at risk to catch and suffer serious complications from illness and disease. Newborns, infants and toddlers are certainly among those more at risk. A one year old infant is either a crawler or a toddler with no knowledge of hygiene and little discretion regarding what should be tasted and chewed. It would be detrimental to expose a young child to the health hazards present at Lerdo."

First, none of the assertions by respondent regarding the inmate population, the health of the population, and the health hazards at the Lerdo Facility are supported by facts in the record before us. More importantly, respondent has failed to show how the Lerdo Facility differs from other jails to the extent that the statutory and case authorities mandating visitation where appropriate with an incarcerated parent should not be followed.

"Every parent and child, with few exceptions [citations] is entitled to a meaningful judicial evaluation of the . . . visitation question every time an order regarding reunification services is made." (*In re Jonathan M., supra,* 53 Cal.App.4th at p. 1238.) Except for the bare allegation that Dylan would suffer detriment by visiting his incarcerated parent, there was no evidence presented below that visitation between Jamie and Dylan while Jamie was incarcerated would be detrimental to Dylan. The court's finding, without substantial evidence of detriment, was error and deprived Jamie of a meaningful evaluation of the visitation question.

II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed and the matter is remanded for the trial court to reconsider its orders regarding visitation while Jamie is incarcerated, consistent with the views expressed herein; in particular, the previously ordered

*See footnote, *ante,* page 765.

nonvisitation during Jamie's incarceration shall not count against her in the court's evaluating reunification and making of further orders. In all other respects, the judgment is affirmed.[4]

Ardaiz, P. J., and Harris, J., concurred.

---

[4]Respondent's motion to produce additional evidence on appeal is denied.