Filed 3/18/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| F.K.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SANTA BARBARA COUNTY,<br><br>    Respondent;<br><br>SANTA BARBARA COUNTY<br>CHILD WELFARE SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B333788<br>(Super. Ct. No. 23JV00092)<br>(Santa Barbara County) |

When a juvenile court removes a child from a parent's custody and orders reunification services, the purpose of those services is to facilitate reunification of the family. The court must evaluate the parent's progress with the court-ordered treatment plan during the reunification period. At the six-month review hearing, the court has discretion to continue reunification services even if it finds there is not a substantial probability the child will be returned to the parent. The court errs when it does

not exercise that discretion.

In this petition for extraordinary writ, F.K. (Mother) challenges the juvenile court's order terminating her reunification services and setting the matter for a selection and implementation hearing regarding her daughter, A.R. (Welf. & Inst. Code, §§ 366.21, subd. (e)(3), 366.26, subd. (*l*)[1]; Cal. Rules of Court, rule 8.452.) Mother contends the Santa Barbara County Department of Child Welfare Services (department) did not consider her grief for the death of A.R.'s twin sister and did not provide reasonable reunification services. She also contends that six months of services were not sufficient. She requests the section 366.26 hearing, scheduled for March 26, 2024, be vacated, and reunification services be reinstated.

Mother filed the petition in propria persona. It is the responsibility of trial counsel to file a petition challenging the setting of a section 366.26 hearing unless the record is clear it has no merit. (Cal. Rules of Court, rule 8.450(c); *Cresse S. v. Superior Court* (1996) 50 Cal.App.4th 947, 956.) As we discuss herein, Mother's petition is meritorious. We grant the petition and order the juvenile court to conduct a new section 366.21 hearing.

FACTUAL AND PROCEDURAL HISTORY

Mother had chronic untreated alcohol abuse and incidents of domestic violence. Her criminal history included two convictions of driving under the influence of alcohol and two convictions of domestic violence causing injury.

When Mother was intoxicated, she would often yell at, and

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

be "rough toward," A.R., age 18 months, and her half-sister, B.T., age 11.  Several times a week, Mother was too intoxicated to care for A.R.  On several occasions when Mother was intoxicated, she injured B.T. from "rough-housing" with her.

Mother and A.R.'s father, T.R., repeatedly fought while intoxicated in the presence of the children.  B.T. reported to police an incident in which Mother and T.R. were lying on the kitchen floor arguing.  Police found both were "clearly intoxicated" and unable to care for the children.  When police spoke to Mother about the incident, she looked at B.T. and said, "[T]his is all your fault."

In one incident after drinking, Mother slapped B.T., leaving a red mark below her eye.  B.T. ran to her father's home and was afraid to return to Mother's home.  Mother told police she did not have an alcohol problem and said B.T. was "exaggerating."

The juvenile court found the dependency petition true (§ 300, subd. (b)(1)) and ordered A.R. removed from Mother's custody (§ 361, subd. (c)(1)).[2]  The court ordered that Mother receive reunification services.  Her service objectives included that she "[s]tay sober and show [her] ability to live free from alcohol dependency," "be able to articulate how her substance use has impacted her ability to safely parent her child and the impact her substance use has had on her child," and "follow the recommended treatment plan of the substance abuse treatment program."  (Bold omitted.)  It also required "individual therapy to further assess her past traumas, loss of her child, grief, and the potential impact they may have on her ability to parent," and that she "accept responsibility for her actions."

---

[2] B.T. was placed with her father and the case was closed as to her.

3

The report prepared in mid-September 2023 for the six-month review hearing stated that Mother was consistently participating in supervised visitation. She was participating in outpatient substance abuse treatment through Recovery Point, which included three outside social support events per week and two psychoeducational group sessions per week, focusing on "relapse prevention, coping skills, and expressing accountability for our own recovery." Her counselor there stated that Mother attended the program as required, was an "active participant," consistently tested negative for all substances in random tests, and "has shown recent growth in the recovery process."

Mother also completed a six-week domestic violence education program through Domestic Violence Solutions. She participated during the classes and the counseling program director believed Mother "was gaining insight and understanding during the classes." During monthly meetings with a child welfare worker, Mother "show[ed] insight regarding domestic violence." She was attending weekly therapy with a licensed clinical social worker, who stated Mother had never missed an appointment, was "actively engaging in therapy and has made progress toward her goals." Mother developed a relapse prevention plan as requested by the department.

Before the six-month review, Mother had several negative tests for alcohol use. But she had one positive alcohol test, admitted drinking on another occasion, and provided one sample considered to be a "dilute test" because she was "overly hydrated." She also had two unexcused missed tests, including one when she forgot to schedule a test after she was released from the emergency room; in both instances, she provided a negative test the next day.

4

The department stated that Mother repeatedly denied having an alcohol problem and could not articulate how her alcohol use affected her children. She said her children were never harmed by her alcohol abuse. She refused to discuss with the department a relapse prevention plan (which she later provided) or whether she was using alcohol as a coping skill. She blamed A.R.'s removal on "assumptions" and on B.T.'s "lie[s]" about Mother's substance abuse.

The six-month review hearing was held December 4, 2023, almost eight months after the petition was sustained. The department did not supplement its September report and no compliance issues were noted for the previous three months.

Mother testified that A.R.'s twin sister died when she was two months old, and she was discussing this with her therapist. She said she drank to cope with her grief. She also acknowledged that her children were removed because of her alcohol use. She discussed her alcohol use with her therapist and her counselor. During the previous four months, she spoke with her sponsor every day. She was employed full time and had secured housing for herself with a room for A.R.

The court stated that Mother was in denial about her alcohol problem, like "[a] lot of substance abusers." The court characterized Mother's admission of an alcohol problem at the review hearing as "somewhat of a hail Mary at this late stage." The court stated it did not have "unbridled discretion" and could not grant more services unless Mother showed she had "substantially complied with the case plan." The court said that was "not my rule," but the Legislature "only gives parents six months to make substantial progress on a plan," and the court was bound by that rule.

The court found the department made reasonable efforts to return the child by providing reasonable services. The court found by clear and convincing evidence that Mother failed to participate regularly and make substantive progress in the treatment plan and there was not a substantial probability of returning custody to her within the time permitted. (§ 366.21, subds. (e)(3), (g)(1)(B) & (C).) The court also found that return of A.R. to Mother's physical custody would create a substantial risk of detriment to A.R.'s safety, protection, or physical and emotional well-being. (§ 366.21, subd. (f)(1).) The court terminated reunification services and set a selection and implementation hearing (§ 366.26) for March 26, 2024.

## DISCUSSION

### *Adequacy of services*

The record does not support Mother's contention that the department did not understand her grief. The department's reports acknowledged the trauma and grief Mother suffered. The department ordered individual therapy to help Mother cope with the impact of her grief on her ability to parent.

In our view, the substance abuse program, domestic violence education, and individual therapy ordered by the department were reasonable and designed to remedy the problems that led to Mother's loss of custody. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) But the department did not provide information regarding any services it provided between the preparation of its report in September 2023 and the six-month review hearing in December. Accordingly, we cannot assess whether such services were adequate.

### *Termination of services*

Mother contends the juvenile court erred when it

terminated reunification services at the six-month review hearing.  We agree.

We review the juvenile court's ruling for substantial evidence.  (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.)  In applying that test, we "necessarily take account of the 'standard of proof that applied before the trial court.' " (*People v. Renteria* (2022) 13 Cal.5th 951, 970.)

Because A.M. was removed from the home when she was less than three years old, reunification services must be ordered for six months from the dispositional hearing, but no longer than 12 months from the time the child entered foster care.  (§ 361.5, subd. (a)(1)(B).)  Section 366.21, subdivision (e), provides that a juvenile court shall not set a section 366.26 hearing if there is a substantial probability the child may be returned to their parent within six months or reasonable services have not been provided to the parent.  When there is noncompliance with a court-ordered treatment plan, termination of reunification services at the six-month review hearing is discretionary.

Thus, if "the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court *may* schedule a hearing pursuant to Section 366.26 within 120 days."  (§ 366.21, subd. (e)(3), italics added.)  "Section 366.21, subdivision (e), places discretion in the hands of the trial court as to whether to schedule a hearing to terminate parental rights." (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 179 (*M.V.*).) "At the six-month review, the court has discretion to continue the case and forebear from scheduling a .26 hearing even if it does not make the finding there is a substantial probability the child may be returned to his or her parent."  (*Ibid.*; accord *S.T. v.*

*Superior Court* (2009) 177 Cal.App.4th 1009, 1015 (*S.T.*).)

On the other hand, when a child is not returned to their parent at the *12-month permanency hearing*, section 366.21, subdivision (g)(1), provides that a juvenile court can extend reunification services by an additional six months "only if it finds that there is a substantial probability that the child will be returned to the physical custody of their parent or legal guardian and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent or legal guardian." (§ 366.21, subd. (g)(1).) A substantial probability the child will be returned requires findings that the parent (1) "consistently and regularly contacted and visited with the child," (2) "made significant progress in resolving problems that led to the child's removal from the home," and (3) "demonstrated the capacity and ability both to complete the objectives of their treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)-(C).)

But section 366.21, subdivision (g)(1) did not preclude extension of services at the six-month review hearing here. In *M.V.*, as in the present case, the juvenile court declined to extend reunification services to 12 months for the parent of a child under the age of three. The juvenile court there mistakenly "believed it lacked the discretion to find a probability of return unless the three factors in section 366.21, subdivision (g)(1) were satisfied." (*M.V.*, *supra*, 167 Cal.App.4th at p. 183.) Instead, "[t]he court was not required to find the existence of all three factors to continue reunification services to a 12-month review." (*Ibid*.) The Court of Appeal issued a writ of mandate directing the juvenile court to vacate its order and hold a new section 366.21

hearing.  (*M.V.*, at p. 184.)

Here, as in *M.V.*, the juvenile court did not exercise its discretion to continue reunification services because it believed it did not have the discretion to do so based on its finding that Mother had not made substantial progress.  But "applying subdivision (g)(1) at a six-month review as if the court were making findings on 'substantial probability' at a 12-month review is legal error."  (*M.V.*, *supra*, 167 Cal.App.4th 166, 180.)  At the six-month review, the juvenile court should weigh evidence pertaining to the factors identified in section 366.21, subdivision (g)(1), "along with any other relevant evidence (such as extenuating circumstances excusing noncompliance with the three factors) in considering whether is there substantial evidence of a possible return to the mother by the 12-month hearing."  (*M.V.*, at p. 181.)

The department's September report may have contributed to the juvenile court's error by stating it need only apply the factors in section 366.21, subdivision (g)(1), implying that the court was required to terminate services and set a section 366.26 hearing.

Writ relief is appropriate because the court apparently believed it did not have discretion.  It did, and the error was not harmless.  (*S.T.*, *supra*, 177 Cal.App.4th at pp. 1016-1017; *M.V.*, *supra*, 167 Cal.App.4th at p. 183.)  Mother did virtually everything she was ordered to do and, in the opinion of the domestic violence counseling director, child welfare worker, substance abuse counselor, and her therapist, Mother was making progress.  Thus, "we cannot say that the court would have abused its discretion by continuing the period for reunification services or that it is not reasonably probable that

the court would have exercised its discretion in [Mother's] favor." (*S.T.*, at p. 1016.)

The juvenile court relied in part on the "recent" missed and diluted alcohol tests. But those occurred in May through July, four to seven months before the hearing. And the court's concern that Mother's therapist did not testify did not justify termination of services in light of the therapist's positive written report and the department's burden of proof. (*In re James Q.* (2000) 81 Cal.App.4th 255, 261.)

That Mother initially denied the role of alcohol abuse in the case was an inadequate basis to terminate services here. As the juvenile court recognized, denial is a frequent occurrence for those with substance abuse problems, and it often acts as a barrier to recovery. (Nemerson, *Alcoholism, Intoxication, and the Criminal Law* (1988) 10 Cardozo L.Rev. 393, 407-408, 441-442, 467-469.) While we do not condone substance abuse violations by parents in the dependency court system, Mother's isolated incidents of alcohol use and missed tests here, viewed in the context of her overwhelming compliance with her treatment plan, did not constitute clear and convincing evidence of lack of progress supported by substantial evidence.

Reunification services may be terminated at the six-month review only when " 'parental unfitness is so well established that there is no longer "reason to believe that positive, nurturing parent-child relationships exist" [citation], and the *parens patriae* interest of the state favoring preservation rather than severance of natural familial bonds has been extinguished.' " (*Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 613.) As noted in *In re B.E.* (2020) 46 Cal.App.5th 932, 941, "relapse is a normal part of recovery. In other words, a relapsed parent is far

from hopeless. It is decidedly *not* fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery."[3] Mother here made substantial efforts and progress that could warrant continuation of reunification services.

DISPOSITION

The petition for extraordinary writ is granted. Let a peremptory writ of mandate issue directing the court to vacate its order of December 4, 2023, vacate the setting of a section 366.26 hearing, and conduct a new hearing pursuant to section 366.21, subdivision (e), in conformity with this opinion. In the interest of justice, this decision is final immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

<u>CERTIFIED FOR PUBLICATION.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.        CODY, J.

---

[3] Section 361.5, subdivision (b)(13) was amended effective January 1, 2022, to clarify that reunification services may not be bypassed based on "passive resistance" to treatment as described in *In re B.E., supra,* 46 Cal.App.5th 932.

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

F.K., in pro. per, for Petitioner.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Real Party in Interest.

No appearance for Respondent.