Filed 1/22/25  Dominic B. v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DOMINIC B.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>    Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | A171638<br><br>(San Francisco County Super. Ct. No. JD23-3320) |

In this writ proceeding, petitioner Dominic B. (Father) requests that this court vacate the juvenile court's order setting a Welfare and Institutions Code section 366.26[1] permanency planning hearing as to his daughter, Dominique B. (Minor), on February 5, 2025.[2]  We deny the petition.

---

[1] All undesignated section references are to the Welfare and Institutions Code.

[2] Minor's mother, Vanessa S. (Mother), also filed notice of intent to file a petition, but her counsel filed a brief stating that he had identified no arguable issues.  Counsel advised Mother that she could file a supplemental brief, but Mother did not file a brief.

1

## BACKGROUND

On October 31, 2023, a section 300 petition was filed by the San Francisco Human Services Agency (Agency) seeking to detain Minor, born in October 2023. Among other things, the petition alleged that Mother and Father had substance abuse and mental health issues, and that they left Minor at the hospital on October 26 and had not returned for the child or responded to attempts to communicate.

In its detention report, the Agency stated that Mother used fentanyl during her pregnancy. Minor experienced withdrawal and was placed on morphine to manage the symptoms, and she had to be fed via a feeding tube. An Agency social worker had spoken to Minor's parents at the hospital, and they reported living on the street for the first five months of Mother's pregnancy. Mother reported fentanyl use for the prior two years and Father "denied any current drug problem." The Agency referred Father for random drug testing.

After Minor's parents left the hospital on October 26, 2023, the Agency social worker sent them text messages at the phone numbers they provided, encouraging them to return to the hospital. She received a message from Father's phone number stating, "wrong number," and no response from Mother. The parents had not returned to the hospital or called to inquire about Minor as of the writing of the report on October 31. Child welfare records indicated Mother had five other children she did not raise.

The Agency texted Mother and Father information about the November 1, 2023 detention hearing, and they appeared. The juvenile court ordered Minor detained in foster care. Father was granted supervised visitation once he "present[ed] himself to the Agency" and his status was elevated to presumed, which occurred on November 15.

2

On January 9, 2024, the Agency filed a jurisdiction/disposition report recommending out-of-home placement, reunification services for Father, and no reunification services for Mother due to her child welfare history (§ 361.5, subds. (b)(10) & (b)(11)). The Agency had been unable to contact or locate Mother or Father. Father was referred for a substance abuse assessment on November 5, 2023, but he had not completed the assessment and he had failed to drug test.

The jurisdiction and disposition hearing was rescheduled and the Agency filed an addendum report on April 4, 2024. An Agency social worker had finally managed to contact Minor's parents on February 16, and Mother stated that both parents were taking medication to address their drug addictions. Mother said Father would only participate in outpatient services. The social worker explained to the parents that they had been referred for drug testing, explained the testing process, and emailed a copy of the referral. The Agency made additional referrals and "explained timelines for reunification and advised the [parents] it was important that they engage in services quickly and respond to" inquiries from the Agency.

In late February 2024, Mother and Father missed several intake appointments to arrange for visitation. On March 21, Mother left a voicemail stating she had been incarcerated. When the Agency social worker and Mother spoke a couple days later, Mother had no explanation why Father had missed the appointments. The Agency observed that it "has had no verbal contact with [F]ather at all since the case opened. He has not responded to emails or calls."

At a hearing on April 15, 2024, the juvenile court sustained an amended petition alleging, among other things, that Mother and Father left Minor without provision for support and had mental health and substance

abuse problems.  The court found reasonable services had been provided, removed Minor from the care and custody of her parents, found that the parents had made no progress, bypassed Mother for reunification services, and ordered Father to participate in services.  Father's case plan included substance abuse assessment and treatment, mental health evaluation and treatment, random drug testing, and parenting education.  The court ordered no visitation for Mother and supervised visits for Father.  The court scheduled a six-month review for October 17.

In a September 26, 2024 report for the six-month review, the Agency recommended termination of Father's reunification services and the setting of a section 366.26 hearing.  Between Minor's birth and July 16, Father had only attended three visits.  Since July 16, Father had consistently attended visitation for six hours per week.  He was appropriate during visitation and cared for Minor's needs.  After finally making himself available in June, Father had been assigned a therapist, but they had not yet met as of the writing of the report.  Father was in a weekly parenting program, but he had not yet completed it.

Father denied current substance abuse, but he tested positive for fentanyl on seven occasions in July and August 2024.  He also tested positive for methamphetamine on July 8 and missed ten tests since June 2024.  A July substance abuse assessment concluded that Father " 'presents with limited insight and low commitment to change, denying [a] pattern of problematic substance use . . . .' "  The assessor noted that Father had reported to other programs in March and April that he was using fentanyl and methamphetamine daily.  Father was referred for residential drug treatment, but Father only sought outpatient treatment.

4

An Agency social worker testified at the October 29, 2024 six-month review hearing. She testified Father had been testing clean since the beginning of September, was doing "really well" in a parenting program, was engaged in Family Treatment Court and outpatient drug treatment, and had just begun individual therapy. Father's whereabouts were unknown from October 2023 to May 2024, and he only started engaging in services in July 2024. The Agency's recommendation remained unchanged despite Father's recent progress because Father had not demonstrated behavior change over time such that he could safely parent Minor.

The nurse who taught Father's parenting course testified on his behalf. She had been meeting with him weekly since August 2024 and he was "very enthusiastic about the material." He was almost done with the second of three modules. A Family Treatment Court coordinator testified that Father started participating in the program in July. He met weekly with his case manager, and he appeared in court once a month. Since Father started with the program, they had not seen any behaviors indicating he continued to use drugs. Regarding his positive drug tests for fentanyl, the coordinator testified the program was "seeing across a lot of cases that even if people are not using we're still seeing kind of that lingering low level. We're trying to get more information about that." She testified "that fentanyl is . . . metabolized, stored in fat cells, and so it can be released over time, and that's why we're seeing this lingering effect of -- these lingering trace amounts remaining in people's systems for quite a long time." The court commented, "it's not consistently going down, and it's not clear what that means." The program coordinator acknowledged the low levels of fentanyl in the test results could also indicate low levels of use. She testified that, nationally,

5

one year of sobriety is viewed as the standard for longer term success, while her program uses 90 days as the benchmark.

Father testified that he and Mother had broken up in July 2024 because Minor was "more important than me being in a relationship with [M]other right now." He testified that the last time he used fentanyl was in February; he had no explanation for his positive drug tests during the summer and he did not think he missed any tests. He started methadone in April or May, and it "eliminate[d] all [his] cravings" for drugs. He did intensive outpatient treatment for 14 weeks and was moving to regular outpatient treatment. He had seen his therapist four to five times. At the beginning of the dependency case, he "was foolish" and "was making bad choices, bad decisions," but he felt as if his life was now "on track" and he was "ready to be there for" Minor.

After hearing closing arguments, the juvenile court noted that there were "credibility issues" with Father's testimony and that Father took "a very long time to come forward, although he's doing really well right now." The court stated, "based on [Father's] history of drug use, he has a ways to go in his recovery." The court found that reasonable services had been provided to Father, that return would cause a substantial risk of detriment, and that there was not a substantial probability of return within the time allowed by law. The court terminated Father's reunification services and scheduled a section 366.26 hearing on February 5, 2025.

Both parents filed notice of intent to file a writ petition, but only Father filed a petition.

6

I.    *Applicable Law*

" '[F]amily preservation is the first priority when dependency proceedings are commenced.' [Citation.]  To that end, '[w]hen a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family.' [Citations.] [¶] . . . Whereas services are presumptively provided for 12 months to children over the age of three and their parents (§ 361.5, subd. (a)(1)), the presumptive rule for children under the age of three on the date of initial removal is that 'court-ordered services shall not exceed a period of six months from the date the child entered foster care.' (§ 361.5, subd. (a)(2); [citation].)  The ' "unique developmental needs of infants and toddlers" ' [citation] justifies a greater emphasis on establishing permanency and stability earlier in the dependency process ' "in cases with a poor prognosis for family reunification." ' " (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 174–175 (*M.V.*); see also *F.K. v. Superior Court* (2024) 100 Cal.App.5th 928, 934–935 (*F.K.*).)

"The third paragraph of section 366.21, subdivision (e), requires a specialized inquiry at the six-month review for children like [Minor], who are 'under the age of three years on the date of the initial removal' and are not being returned to the custody of their parents at that time.  For such dependent children, if 'the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the *court may schedule a hearing pursuant to [s]ection 366.26* within 120 days. If, however, the court finds there is a *substantial probability that the child . . . may be returned* to his or her parent or legal guardian within six months or that reasonable services have

not been provided, the court shall continue the case to the 12-month permanency hearing.' (§ 366.21, subd. (e), italics added.)" (*M.V.*, *supra*, 167 Cal.App.4th at p. 175; see also *F.K.*, *supra*, 100 Cal.App.5th at pp. 934–935.)

"Thus, there are two distinct determinations to be made by trial courts applying the third paragraph of section 366.21, subdivision (e). First, the statute identifies specific factual findings—failure to participate regularly and make substantive progress in the court-ordered treatment plan—that, if found by clear and convincing evidence, would *justify* the court in scheduling a .26 hearing to terminate parental rights. But this inquiry does not *require* the court to schedule a .26 hearing ('the court *may* schedule a hearing'). [Citations.] Instead, it authorizes the court to set such a hearing if the required findings have been made." (*M.V.*, *supra*, 167 Cal.App.4th at pp. 175–176; see also *F.K.*, *supra*, 100 Cal.App.5th at pp. 934–935.)

"The second determination called for by the third paragraph of section 366.21, subdivision (e), protects parents and guardians against premature .26 hearings. Notwithstanding any findings made pursuant to the first determination, the court shall not set a .26 hearing if it finds either[:] (1) 'there is a substantial probability that the child . . . may be returned to his or her parent . . . within six months . . .'; or (2) 'reasonable services have not been provided . . .' to the parent. (§ 366.21, subd. (e).) In other words, the court must continue the case to the 12-month review if it makes either of these findings." (*M.V.*, *supra*, 167 Cal.App.4th at p. 176; see also *F.K.*, *supra*, 100 Cal.App.5th at pp. 934–935.)

"We review the juvenile court's findings for substantial evidence, and the juvenile court's decisionmaking process based on those findings for abuse of discretion." (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223.) "[W]hen reviewing a finding that a fact has been

8

proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see also *In re V.L.* (2020) 54 Cal.App.5th 147, 155.)

II.   *Analysis*

In the present case, Father makes the same argument on the question of whether he participated regularly and made substantive progress in the court-ordered treatment plan and on the question of whether there was a substantial probability of return by the 12-month review hearing.[3]  He argues that "his progress, at the time of the six-month review trial, was indeed substantive despite his late engagement with some services and visits. Essentially, anything he should've started earlier in the case, he was doing at the time of the trial."  Father points out that he had been consistent with and appropriate during visitation since July 2024; that he acted quickly on the therapy referral (once he finally started engaging in services); that he was enthusiastically engaged in a parenting program; that he had engaged in outpatient treatment since June; and that he had tested clean since the beginning of September.  Father argues that he "had clearly turned the [corner] and was on a new path which included housing separate from the mother and months of sobriety, as shown by the negative test results leading up to the trial."

As the juvenile court acknowledged, Father made commendable progress immediately before the six-month review hearing.  But Father does not suggest that the juvenile court failed to consider any of the evidence he highlights in his petition.  Instead, as the Agency argues, "Father is

_____

[3] Father does not dispute that the Agency provided reasonable services.

9

essentially requesting that this Court reweigh the evidence in his favor and substitute its judgment for that of the juvenile court." That we cannot do. (See, e.g., *In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [the reviewing court has "no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence"], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 636 & fn. 5.)

In the present case, it is undisputed that Father waited between eight and nine months—from late October 2023 to July 2024—to start to engage with the Agency regarding services. Between Minor's birth in October 2023 and mid-July 2024, Father attended only three visits. Father started consistently testing clean only in the month before the six-month review hearing,[4] and his substance abuse assessor opined that Father presented with limited insight and low commitment to change. Although Father's sobriety at the time of the six-month review hearing was significant, the trial court could reasonably conclude it did not constitute the type of sustained progress necessary to demonstrate substantive progress in his treatment plan. Father made progress in a parenting education program, but he had only recently started therapy by the time of the six-month review hearing.

We conclude substantial evidence supports the juvenile court's finding by clear and convincing evidence that Father failed to participate regularly and make substantive progress in the court-ordered treatment plan. (Cf.

---

[4] The juvenile court was not obligated to accept the suggestion of one of Father's witnesses that the summer 2024 positive drug tests might have been possible without use of fentanyl—especially in light of the missed tests and the positive methamphetamine test, which contradicted Father's claim of sobriety during that period.

*F.K.*, *supra*, 100 Cal.App.5th at p. 937 ["Mother's isolated incidents of alcohol use and missed tests here, viewed in the context of her overwhelming compliance with her treatment plan, did not constitute clear and convincing evidence of lack of progress supported by substantial evidence"].) We also conclude substantial evidence supports the juvenile court's finding that there was no substantial probability of return of Minor to Father's care by the time of the 12-month review hearing—only a couple of months later, in December 2024. (See *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 840 [the phrase "within 6 months" in section 366.21, subdivision (e) means "such time as remains until a potential 12-month review hearing, even if less than six months"].) The juvenile court's order is consistent with the statutory scheme; despite Father's eventual efforts, his extreme delay in engaging in services presented a great obstacle to reunification in the present case. (See *Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 613 ["[T]he truncated [six-month] time frame is an acknowledgment that where parents fail to regularly participate in reunification services from the outset, despite a warning services may be discontinued absent compliance, a very young child's needs for permanency and stability cannot be postponed without significant detriment"].)

## DISPOSITION

The writ petition is denied on the merits. Because the section 366.26 hearing is set for February 5, 2025, our decision is final as to this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

                                                SIMONS, Acting P. J.

We concur.

BURNS, J.
CHOU, J.

(A171638)

12